Mr. Tapa, am I pronouncing that correctly? Topa. Topa, I'm sorry. So Mr. Tapa, you have reserved three minutes for rebuttal. Why don't we just give everybody a minute to clear out just so we'll have less background noise. Speaking of background noise, I had you and I will have you on mute because there's a lot of background noise here so you will understand. All right. Connecticut's a noisy place, I know that. That's why I stay in the city where it's quiet. All right. We have a few folks now coming in so we'll just let everybody get settled and then we'll begin with you, Mr. Tapa. Okay. Looks like we're good to go. Mr. Tapa, you've got seven minutes to begin and three minutes for rebuttal. Thank you. I think it's almost the afternoon, but good morning, your honors. May it please the court. I'm Professor Haya Topa from the CLEAR Project at CUNY School of Law. On behalf of the appellant, Mr. Siraj has undergone a truly extraordinary transformation during the course of his 20 years of incarceration where he has effectively served 85% of his sentence. Mr. Siraj has shown his rehabilitation in both word and deed. He has put his own safety at risk to protect a federal correctional officer from an act of violence from another Muslim inmate. He has demonstrated that he has completely extricated himself from the destructive ideology that led to his offending conduct. He has made sustained and sincere efforts to help others both within and outside of prison to avoid the pitfalls he fell into. He has not had a single disciplinary infraction in more than 12 years. He has engaged and completed thousands of hours of programming and been praised by correctional staff for his outstanding conduct in prison. Instead of properly crediting these efforts by Mr. Siraj to atone for his offense as evidence of his remarkable rehabilitation, the court below cherry picked a few words in his letter out of context and ignored all the other parts of that sentence of that same letter where he expressed remorse and accepted responsibility for his actions. In doing so and in failing to fully credit Mr. Siraj's extraordinary record of concrete actions, proving his rehabilitation, the district court abused its discretion. And I'd like to unpack all the different ways in which the district court's analysis of Mr. Siraj's letter was erroneous. So there's layers to this. The statement refers to a state of mind. The words that the district court was relying on to arrive at its conclusion were referring to a state of mind at the time of this original sentencing, not his current state of mind. I'll read the full portion of the sentence that was quoted. I am still deeply sorry and remorseful for the things I said, the thoughts I entertained, the choices I made, and the actions I undertook. I knew I would never have been involved in any terrorist plot had I never met the informant, but I also knew I'd made some terrible mistakes. I hope your honor would understand that I was taking accountability for my reprehensible actions. So, for one, the court is reading this statement where he's acknowledging his state of mind at the time of his sentencing as reflecting his current state of mind regarding whether he accepts responsibility for his conduct then or not. And even if the statement could be inferred or read to reflect his current state of mind, it does not contradict his acceptance of responsibility. The informant playing some role in his offense and Mr. Sarraj accepting responsibility can both be true at the same time. They're related, but they're independent things. Well, here is the thing. He argued originally entrapment, and entrapment was denied because he was predisposed. It wasn't denied because the government had no actions. It was denied because he was predisposed. So, you are saying that even if this is a statement of him at that latter time, he's simply saying the government was involved, there was no finding to a contrary, I was predisposed. So, you're saying how can that be a denial of responsibility? Absolutely, Your Honor. And, you know, the statement, the letter also includes an acknowledgement of views that he expressed prior to meeting the informant. This is not reflecting any sort of argument that the informant was completely responsible for his actions. Now, what does the fact that somebody has changed and so on do on the question of whether the court should grant a release before, lessen the sentence? That is, we have things which say it alone is not enough, so that if I agree with you that the court may be erred in what it says, where does that get me? Well, Your Honor, I think one thing that we are raising is that the district court also failed in combining the factors that Mr. Siraj raised. Well, that's an interesting question because I wrote Brooker, and I think I meant whatever I wrote, that either singly or jointly was enough. I didn't write that you could just look at one rather than the other. If it is joint, it should be looked at joint. But the government says that the court did look at joint. Well, that's not right, Your Honor. The decision specifically, the judge responds at the outset of the discussion regarding the arguments that Mr. Siraj raises that are supposed to be considered extraordinary and compelling reasons and says, with the understanding that these can be evaluated in isolation or combination, the court considers each in turn. Now, because Mr. Siraj's briefing at the district court included an arrangement of arguments that lumped rehabilitation along with his vulnerabilities, the court does address those two aspects together, but it does not return to the other arguments that Mr. Siraj raises regarding the sentence disparities, regarding the unjust length of his sentence, regarding the risks of COVID and the conditions of confinement that he's experienced. So the court specifically is just addressing each of the arguments individually. But what is the basis for us concluding that the district court was under a misimpression that it couldn't consider them in combination? No, I don't think the district court was under a misimpression that it couldn't. I think the court just chose. It assumed that it had the discretion to consider the individual reasons raised. The district court was basically just quoting the language of Brooker, right? Right. Well, I think, Your Honor, one case that we would point the court's attention to is United States v. Lugo, where the district court below, in a prior decision, did employ a combinative approach in considering the issues that were... But I think you're suggesting that the district court has to sort of make a statement on the record and say, I consider each of these in turn, and now I'm going to do the cumulative analysis and has to announce all that. But we've never required that, have we? Well, no, Your Honor. And I don't think what we're asking the court to do is... So I think there's two separate questions. Is the court obligated to consider the issues in combination or not? And then there's a second question. What does the court have to say regarding its analysis for appellate review? But the government says we don't need to reach that issue because, in fact, the court considered them in combination. So the issue of law, which would be an interesting issue of whether Calabresi was sloppy in Brooker, is not really before us if we agree with the government that the court actually did consider them in combination. Well, I think that would be the case. But respectfully, we disagree that the decision below does not reflect the court factoring in all the different reasons that... Well, we'll have to hear the government's argument of that. Yeah, of course. And I think I would just point the court's attention to a similar predicament that's occurred in the First Circuit, where the First Circuit originally also discussed the multifaceted analysis that a district court should engage in when evaluating the extraordinary compelling reasons that a defendant raises. And subsequently, defendants argued that a district court erred by not considering the cumulative effect. And the First Circuit has clarified in the United States v. Gonzales, the 2023 case, that the district court needs to respond to the arguments as they're raised by the defendant. And just to say that in this case, Mr. Siraj clearly articulated in his briefing at the district court that he considered all of these reasons in combination to satisfy the extraordinary compelling standard. For the district court to completely ignore that and not engage in that analysis of whether those cumulative issues raised satisfy that standard. But the district court considered each of the arguments. That's right. Rejected each one, right? That's right, yes. And so you're saying that by not sort of making that cumulative statement, we should remand and make the court announce that or do that. That's what your position is, right? Well, what we're saying is that the district court should engage in the same form and type of analysis that it engaged in in the United States v. Lugo, a prior decision, where it did consider whether a deficiency in one of the arguments that You're not asking us to have the court make a statement. You're asking us to see whether the court did act considering all of them. That is, it's not, you're not pushing us to do something we very rarely do, which is to say to the court, hey, tell us this, use the specific words, as in a famous opinion of Justice Cabranes, he said, we don't do that, of asking. Yes, Your Honor, we're not asking the district court to use some magical words to bless the decision and make it whole again. But we're just simply asking it to do. Again, there's a separate question regarding whether the district court, what type of review the district court has to present in its decisions for an adequate review at the appellate level. And I think that that may be more deferential to the district court in terms of whether it needs to, to what detail it needs to address the arguments that the defendant raises. But I think there is clearly a question here. Did the district court assume they'd had the discretion to consider the issues in isolation? I think clearly by the layout of the arguments, the district court does engage in them individually, but does never return to them. The first statement that the district court makes before it starts discussing those individual reasons that the defendant has raised specifically says that it's going to consider them in turn with the understanding that it could decide them. Let me ask you, if we were to hold that the court can decide, discuss these singly or jointly, you're saying that would create a circuit split with the First Circuit? Well, Your Honor, I think there's a couple of issues with... No, I mean... Yes. If that's what you said, and I would just want to know if that, if you are saying if we hold that as a matter of law clearly, we would be at least arguably creating a circuit split with the First. Well, Your Honor, if what you're saying is if this court were to hold that a district court has unfettered discretion to decide when it will choose to individually analyze the arguments raised, and when it will decide to use a combinative approach, then yes, that would be in conflict with the First Circuit. And I would also argue that there's several other reasons why this court should... Yeah, no, I understand, but I was asking a very specific question. Thank you. All right. Well, you reserved time for rebuttal. We'll now hear from Ms. Gupta. Oh, I'm so glad to see you do that. Thank you, Your Honor. Good morning, and may it please the court, my name is Nina Gupta, and I represent the United States. The defendant was convicted in 2006 in connection with a conspiracy to bomb a subway station in Manhattan and was sentenced to 30 years, the bottom of the guidelines range. The district judge, which presided over the defendant's trial, sentencing, and numerous post-conviction motions, properly denied the defendant's motion for compassionate release, finding that there were no extraordinary and compelling reasons for release. And I'll just pick up first where opposing counsel left off on this idea that the district court somehow abused its discretion in its analysis of the proffered extraordinary and compelling reasons for release. As an initial matter, the district court's order directly refutes what opposing counsel has argued. It explicitly considered the appellant's youth, vulnerabilities at the time of the offense, and rehabilitation in combination, and it was very explicit about that. And then there's no indication from the district court's order that it analyzed the remaining reasons for release solely in isolation. Certainly, the judge never discussed one reason for compassionate release to the exclusion of all others, and it was informed by all of the proffered reasons for compassionate release when considering each one. The fact that the court broke out its analysis for certain proffered reasons for compassionate release into separate paragraphs does not mean that it analyzed each of those factors in a vacuum. That speaks more simply to the organization of the opinion. There is simply no basis to conclude that the district court did not analyze these reasons for compassionate release in the aggregate. So what you are saying, that even if Brooker held that the court could consider one reason and find that reason sufficient, or it could consider them all together, that that fact would not be violated by what the court did here? That's correct, Your Honor. As this court recognized in United States v. Cossie, this is 632 F3rd 82, there's a presumption that the district judge considered the arguments before her unless the record clearly suggests otherwise, and that simply isn't the case here. The fact that the district judge broke out her analysis of each factor does not mean that each one was considered in isolation. And indeed, the only statutory limit on the court's analysis is section 994T, providing that rehabilitation of the defendant alone should not be considered an extraordinary and compelling reason for release. And the court cited that language and proceeded to analyze rehabilitation, vulnerabilities, and age together before considering the other arguments that were raised by the defendant. And for these reasons, the framework of the district court's analysis was proper. Now, I also want to address the arguments that opposing counsel made regarding the rehabilitation of the appellant. Now, certainly the district judge acknowledged the defendant's record while incarcerated, but took issue with certain statements that the defendant made regarding the crime, which, in the district court's view, showed that he had not fully accepted responsibility and cast doubt upon his rehabilitation. And the court did not err in its conclusion. The court pointed not only to the statement that was just mentioned, but also to the fact that the appellant had written a letter in which he stated that he was charged with terrorism, that he was innocent of that crime, and that he was charged for what he said. And that simply isn't true. He was not charged and convicted for what he said. He was charged and convicted for planning a very dangerous plot to bomb a subway station that could have taken countless lives. Now, the district judge recognized that, determined that accountability is at the heart of rehabilitation, and therefore could not fully credit the arguments that the appellant made regarding rehabilitation. And even putting that aside, rehabilitation alone, of course, is not sufficient to grant compassionate release. And the district judge also considered the alleged vulnerabilities at the time of the offense, as well as the appellant's age in determining that those factors, in combination with rehabilitation, would not mandate compassionate release in this case. Now, I'll also just briefly address the arguments regarding Lugo. Now, opposing counsel raised Lugo, which is certainly distinguishable from the instant case. In Lugo, the same district judge found that there was an extreme disparity between Lugo's life sentence and his co-defendant's sentences for 30 years, where those co-defendants had lengthy criminal records and at least as equally egregious behavior. And in that case, it's notable that the co-defendants were acquitted of certain crimes at trial, and they originally received life sentences, but then were resentenced to 30 years by a different district judge. And that's precisely why the district judge in that case found that there was a disparity that warranted compassionate release. But we don't have the same thing here. The district court noted here that the defendant's co-defendant chose to cooperate. He was a diagnosed schizophrenic. He had several – there were several factors, whereas the appellant here had obstructed justice and justifiably received a sentence enhancement, and certainly it was not an abuse of discretion in finding that. In fact, recently, this court in United States v. Fernandez, docket number 22-3122, which was decided in June of this year, this court recognized that lower sentences for cooperating defendants are explicitly contemplated by the sentencing guidelines, and such circumstances are not extraordinary or compelling. And if the court has no further questions for me, to conclude, the judgment of the district court should be affirmed and will rest on our papers. Thank you. All right. Thank you very much. I'm going to hear from Mr. Chopra for three minutes of rebuttal. Thank you, Your Honor. So I'd like to just begin by pointing out that even if this court were to agree with the government that – even if this court were to agree with the government that the district court did engage in a combinative approach, Mr. Sraj has raised other sufficient reasons for vacatory and remand related to the abuse of discretion and the analysis of Mr. Sraj's letter, the other factual determinations that the court relied on. And I'd like to just quickly address United States v. Fernandez, which opposing counsel just raised. United States v. Fernandez acknowledges that there are – there is the potential for an unusual sentence disparity that exists between a defendant and – between co-defendants where one cooperates and one proceeds to trial and is given a much harsher sentence. So there is no per se rule that this court cannot consider those types of sentence disparities. And we would argue that the instant case does present that type of sentence disparity. Mr. Sraj specifically received a 300-month – a sentence that was 300 months greater than his co-defendant. Mr. Sraj's co-defendant, despite what opposing counsel says, actually had more aggravating factors that would suggest he deserved a harsher sentence than he did. Mr. El Shafee, the co-defendant, was not involved with the government informant, meeting him, having conversations with him for months prior to him offering a proposal for a terrorist conspiracy to Mr. Sraj. Additionally, so he was the first of the co-defendants to actually propose targets. Additionally, Mr. Sraj's co-defendant also was willing to actually place explosives at the last meeting between the co-defendants and the government informant. And so I think certain sentence disparities or variances between sentences can be justified for the purposes of incentivizing defendants to accept plea deals, to provide intelligence, to cooperate against other potential co-defendants or criminal conspirators. But in this case, Mr. Sraj and his co-defendant were the only two people involved in this conspiracy. So you have both of them being arrested the same day, and Mr. Sraj's co-defendant and Mr. Sraj both confessed to what their conspiracy was on the same day. And to suggest that Mr. Sraj should suffer a 300-month disparity in his sentence because he was not quick enough to agree to cooperate against his other one co-defendant just doesn't, can't be justified. Well, wait, you say that, but I mean, what's your best case for that? I mean, we routinely said that cooperation is different and that it means that the two defendants are not similarly situated. Well, Your Honor, I agree that the idea that a sentence disparity... But it seems like you're really just disagreeing with the weight given to this factor and other factors by the district court. But abuse of discretion is the standard, right? That's right, Your Honor. But I think in this case, just to respond, there is a separate abuse of discretion without actually reaching whether the court's consideration of it as an extraordinary and compelling reason in and of itself was an abuse of discretion. Meaning, the court suggests that the reason for the sentence disparity between Mr. Sraj and his co-defendant is not a result of his exercise or his choice to proceed to trial. The court says it's because of their offending conduct. And the only thing that the court can point to regarding Mr. Sraj's offending conduct that is more aggravating in nature is his conduct during trial, which we agree is objectionable and Mr. Sraj expresses remorse for that. But the point is, the obstruction of justice enhancement that Mr. Sraj received, and the court points out in its decision, would not reflect a 300-month disparity between Mr. Sraj and his co-defendant. The disparity, the calculation would lead, even with an acceptance of responsibility downward departure and even with the obstruction enhancement, Mr. Sraj's criminal history points would only go down by four and the downward range of his sentence would still be 262 months. So the idea is that he could have received a 100-month reduction based on the sentence he did receive had he cooperated, had he not proceeded to trial, had he not obstructed justice. But it still would be 200 months greater than the sentence his co-defendant receives. And so the court's understanding that this was a result of his pleading, this was a result of his conduct during trial, is just not supported by... But you seem to be leaving out the fact that the co-defendant got the benefit for cooperating, right? Well... It seems as though he got five years for multiple murders. It's because cooperation is rewarded. Well, Your Honor, I think the cooperation, again, I think in different contexts where there's cooperation involving large narcotics conspiracies, crime families, it would make sense for the government to incentivize cooperation with one co-defendant who can provide valuable intelligence and assist... Counsel. Yes. I am and long have been troubled by this giving benefits to what in Italy they call the pentiti, the people who come in. But there was a district judge in the Eastern District who agreed with that position and constantly refused to do it, and we reversed that judge constantly because we held, whether rightly or wrongly, that the law was that you could give extreme benefits. So, you know, I'm sympathetic to what you're saying, but I think it's awfully late in the day to be arguing it. Yes. Well, I think going back to, I think, our larger point regarding the court's consideration of these issues, and just as a lot of circuits throughout this country have ruled on certain arguments that a defendant can raise, like, for example, non-retroactive changes in sentencing law, and other circuits have considered that those things cannot by themselves be an extraordinarily compelling reason, but in combination with other factors they can be. And what we're simply arguing is that, well, one, the district court erred in the way it was considering and understanding the sentence disparity that Mr. Surratt suffered between himself and his co-defendant, but more importantly, the fact that it didn't credit that along with the other arguments that Mr. Surratt's raised to arrive at the conclusion that he has demonstrated extraordinary compelling reasons to reduce his sentence. Well, we will reserve decision. Thank you both. Thank you.